# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **LOUIS B. ANTONACCI**, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15 C 3750 |
| | ) | |
| **CITY OF CHICAGO**, a municipal | ) | |
| corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This Court has just received, via the computerized random assignment system in force in this District Court, the prolix[1] Complaint filed pro se by attorney Louis Antonacci ("Antonacci"). This Court has waded through Antonacci's extensive allegations, and this memorandum order is issued sua sponte because of some patently problematic aspects of the pleading.

Four of Antonacci's legal theories are nonfederal in nature: Count I is labeled "Common Law Fraud," Count II is labeled "Breach of Fiduciary Duty," Count III is labeled "Full Conspiracy" and Count VI is labeled "Legal Malpractice." Only two of the counts are purportedly advanced in federal-question terms -- Counts IV and V seek to invoke civil RICO. But quite apart from the obvious difficulty in squaring Antonacci's Complaint with the Fed. R.

_____

[1] Prolix is used advisedly: Antonacci's Complaint comprises no fewer than 295 paragraphs that occupy 57 pages and that assert a half dozen theories of liability labeled as separate counts (a locution that, although in common usage, follows the cause of action notion that governs state court pleading rather than the federal concept of a claim for relief -- in that respect, see the excellent discussions in NAACP v. Am. Family Mut. Ins. Co., 978 F. 2d 287, 292 (7th Cir. 1992) and Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992)).

Civ. P. ("Rule") 8(a)(2) requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief."[2] Antonacci's assertions that he has assertedly been the victim of a massive global conspiracy on the part of what seems to be the entire world with which he comes into contact plainly appears to fail -- flat-out -- the "plausibility" requirement established by the Twombly-Iqbal canon that has taken the place of the long-standing and overly generous Conley v. Gibson approach.

What this Court has therefore done is to view Antonacci's Complaint in terms of the diversity-of-citizenship branch of federal jurisprudence, which he purports to call into play in Complaint ¶ 16. And from that perspective, as the ensuing analysis demonstrates, Antonacci's pleading gets a failing grade in every respect.

At the outset of that analysis, it is worth a moment's look to understand why it should take place at all. On that score it has been nearly three decades since Wis. Knife Works v. Nat'l Metal Crafters, 781 F.2d 1280, 1282 (7th Cir. 1986) set out a fundamental proposition that remains as true today as when it was written:

> The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

And such cases as Wernsing v. Thompson, 423 F.3d 732, 743 (7th Cir. 2005) have since made clear that the sua sponte jurisdictional inquiry that follows is mandatory on any court such as this one:

> Jurisdiction is the power to declare law, and without it the federal courts cannot proceed. Accordingly, not only may the federal courts police subject matter jurisdiction sua sponte, they must.

_____

[2] This Court of course recognizes that what has just been said in the text poses no substantive problem when the nature of a complaint demands more.

Now to the substantive analysis itself. Here every individual party -- Antonacci himself and all of the individuals named as defendants -- are spoken of in terms of their <u>residences</u> rather than their respective states of <u>citizenship</u>. In that regard such cases as <u>Adams v. Catrambone</u>, 359 F.3d 858, 861 (7th Cir. 2004) continue to repeat the command that "when the parties allege residence but not citizenship, the district court must dismiss the suit."

That, however, is only the start. Three of Antonacci's targeted defendants are law firms that the Complaint describes as limited liability companies: Seyfarth Shaw LLP ("Seyfarth Shaw") (Complaint ¶ 3), Perkins Coie LLC ("Perkins Coie") (Complaint ¶ 7) and Neal & Leroy LLC (Complaint ¶ 14). And as to each of those defendants Antonacci has alleged only irrelevancies -- their respective states of organization and their respective principal places of business. But in that respect such cases as <u>Wise v. Wachovia Sec. LLC</u>, 50 F.3d 265, 267 (7th Cir. 2006) (citing a passel of earlier cases) have regularly reconfirmed (in this instance nearly a decade ago) what facts to look to in determining whether diversity of citizenship exists:

> The citizenship for diversity purposes of a limited liability company, however, despite the resemblance of such a company to a corporation (the hallmark of both being limited liability), is the citizenship of each of its members.

That last deficiency on Antonacci's part is particularly troublesome, for Seyfarth Shaw and Perkins Coie are national law firms with multiple offices around the country. If either has even a single member that (like Antonacci) is a citizen of the District of Columbia[3] the complete diversity that has been required for more than two centuries (see <u>Strawbridge v. Curtiss</u>, 7 U.S. (3 Cranch) 267 (1806)) would be destroyed, and with it Antonacci's access to this federal district court.

---

[3] What is said in the text assumes, as is most often the case, that Antonacci's District of Columbia's residence coincides with his citizenship there.

In summary, this Court holds that Antonacci cannot use civil RICO as the springboard for federal-question jurisdiction in the subjective and objective good faith required by Rule 11(b), so that Antonacci's multiple failures in terms of diversity of citizenship mandate dismissal (again see <u>Adams v. Catrambone</u>). But because this Court's view has always been that the "must dismiss the suit" language of the latter decision may be viewed as Draconian in nature, its consistent practice has been to comply with that case's mandate but, if a plaintiff were to cure that deficiency within the 28-day time frame made available by Rule 59(e), to entertain a motion that would avoid the plaintiff's having to file a new lawsuit -- on condition, however, that a payment equivalent to another filing fee must be tendered by the plaintiff to avoid his, her or its having to redraft a bulky complaint. This Court accordingly orders that both the Complaint and this action be dismissed because of Antonacci's failure to establish the existence of federal subject matter jurisdiction.

_____
Milton I. Shadur
Senior United States District Judge

Date: May 5, 2015